UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARIA I. CRUZ,

Plaintiff,

-vs-                                                      Case No.  6:12-cv-1098-Orl-22KRS

WINTER GARDEN REALTY, LLC,
JAMES GARGASZ, JOHN GARGASZ,

Defendants.

_____

REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT:

This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO DISMISS DEFENDANT, WINTER GARDEN REALTY, LLC'S AMENDED COUNTERCLAIM (Doc. No. 20)** |
| **FILED:** | **September 20, 2012** |

I.       PROCEDURAL HISTORY.

Plaintiff, Maria I. Cruz ("Cruz"), filed a complaint against Defendants, Winter Garden

Realty, LLC ("Winter Garden Realty"), James Gargasz, and John Gargasz (referred to collectively

as "Defendants"), alleging that the Defendants violated the minimum wage and overtime

provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), as well as Article

X, Section 24 of the Florida Constitution.  Doc. No. 1 ¶¶ 1, 12, 16, 18.  Relevant to the instant

motion, Cruz alleges that Winter Garden Realty violated the FLSA throughout her employment,

which ran from September 17, 2010 until May 7, 2012.  *Id.* ¶¶ 4, 12, 16.  Winter Garden Realty

answered the complaint and asserted counterclaims against Cruz.  Doc. No. 11.

After Cruz moved to dismiss Winter Garden Realty's original counterclaims, it filed

amended counterclaims against Cruz for tortious interference with contractual relationships

between Winter Garden Realty and its tenants; civil theft; and conversion.  Doc. No. 18.  With its

amended counterclaims, Winter Garden Realty alleges that, "[d]uring the period in which Cruz

contends she was working for Winter Garden, while it may have appeared she was working,

Winter Garden contends that she was actually a) interfering with contractual relationships between

Winter Garden and its tenants by trying to convince such tenants not to pay their rent to Winter

Garden; b) stealing and/or converting rent monies from Winter Garden which she collected from

tenants; and c) doing work for a web-based internet company which is entirely unrelated to Winter

Garden."  *Id.* ¶ 7.  Winter Garden gives two examples of the alleged tortious interference,

conversion, and civil theft, both of which appear to have occurred around May 2012.  *Id.* ¶¶ 22-24,

28, 35.  Winter Garden Realty also alleges that "the time Cruz spent at Winter Garden was often a

consequence of the fact that she was residing there, not working there."  *Id.* ¶ 9.  Winter Garden

Realty invokes the supplemental jurisdiction provisions of 28 U.S.C. § 1367 to establish that the

Court has subject matter jurisdiction over its counterclaims.  *Id.* ¶ 4.

Cruz filed a motion to dismiss Winter Garden Realty's amended counterclaims pursuant to

Federal Rule of Civil Procedure 12(b)(1).[1]  Doc. 20.  Cruz argues that the Court may not exercise

---

[1] The introductory paragraph of Cruz's motion also mentions Rule 12(b)(6), but the remainder of her motion deals exclusively with questions of subject matter jurisdiction.  Therefore, I consider this motion as though it were pursued only under Rule 12(b)(1).

supplemental jurisdiction over the counterclaims because they are insufficiently related to her FLSA wage claims. *Id.* at 3-5. Alternatively, Cruz argues that, even if the Court may exercise supplemental jurisdiction, it should decline to do so because Winter Garden Realty's state law counterclaims will substantially predominate over her FLSA wage claims. *Id.* at 5-7.

Winter Garden Realty filed a response in opposition to Cruz's motion to dismiss. Doc. No. 22. Winter Garden Realty argues that the Court should exercise supplemental jurisdiction over its claims against Cruz because the same operative facts serve as the basis for Cruz's FLSA wage claims and Winter Garden Realty's counterclaims, thereby making them compulsory counterclaims. *Id.* at 4-8. Winter Garden Realty also argues that its state law claims are "so inextricably intertwined" with Cruz's wage claims "as to require the court to accept jurisdiction," and that judicial economy warrants trying its counterclaims with Cruz's wage claims. *Id.* at 4-6.[2]

---

[2] Winter Garden Realty confined its response to arguing that the Court has supplemental jurisdiction over its amended counterclaims because they are compulsory counterclaims and did not argue that it was entitled to a setoff against Cruz's FLSA wage claims. However, I note that Winter Garden Realty's amended counterclaims theorize that it would be entitled to a setoff if it proves that Cruz stole its rent monies. Doc. No. 18 ¶ 8. Winter Garden Realty has not affirmatively asserted a right to a setoff in its Answer and Affirmative Defenses, Doc. No. 11, and its counterclaims are formulated to seek affirmative relief, not as setoffs. Accordingly, I will not address the issue of setoffs in this Report and Recommendation.

## II.     APPLICABLE LEGAL STANDARDS.

A.     *Motion to Dismiss for Lack of Subject Matter Jurisdiction.*

In a motion to dismiss, whether it is a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim, the Court is required to construe the complaint in the light most favorable to the party whose claim is being challenged, and accept all the facts alleged by that party as true. *Hutton v. Grumpie's Pizza & Subs, Inc.*, No. 07-81228-CIV, 2008 WL 1995091, at *1 (S.D. Fla. May 7, 2008) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)). Thus, in considering Cruz's motion to dismiss Winter Garden Realty's counterclaims, I accept all well-pleaded facts alleged by Winter Garden Realty as true.

B.     *Supplemental Jurisdiction under § 1367.*

The Court has original jurisdiction over Cruz's FLSA claims pursuant to 28 U.S.C. § 1331. Winter Garden Realty's counterclaims arise under state law and do not meet the requirements for jurisdiction under 28 U.S.C. § 1332. Accordingly, the Court has no independent jurisdiction over them. Instead, the Court has subject matter jurisdiction over Winter Garden Realty's counterclaims only if supplemental jurisdiction is authorized under 28 U.S.C. § 1367. Section 1367 provides the Court with supplemental jurisdiction over claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Eleventh Circuit has held that § 1367 gives federal courts the power to exercise supplemental jurisdiction over all state law claims that arise out of a common nucleus of operative fact with a substantial federal claim. *Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997) (citing *United*

*Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724-25 (1966)).  In determining whether state law claims satisfy this standard, courts examine "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence."  *Hudson v. Delta Airlines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) (citing *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir. 1994)).

However, even if the Court has the power to exercise supplemental jurisdiction over a state law claim, § 1367 also gives the Court the discretion to decline to exercise supplemental jurisdiction over a claim arising under state law when:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  If, after examining the factors listed in § 1367(c), the district court decides that it has the discretion to decline to jurisdiction, it should consider the traditional rationales for pendent jurisdiction in deciding whether or not to exercise that jurisdiction, including judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together.  *Palmer*, 22 F.3d at 1569 (citing *Gibbs*, 383 U.S. at 725-27).

Courts considering supplemental jurisdiction have declined to exercise jurisdiction in cases in which the state law claims require different or foreign elements of proof, finding that the claims "substantially predominate" over the claims over which the court has original jurisdiction.  *See,*

*e.g.*, *Ciavaglia v. Gevity H.R., Inc*., No. 6:07-cv-1206-Orl-22KRS, 2008 WL 782494, at *1-2

(M.D. Fla. March 20, 2008) (citing *James v. Sun Glass Hut of Cal., Inc.*, 799 F. Supp. 1083, 1084

(D. Colo. 1992)); *Gregory v. S. New England Tel. Co.*, 896 F. Supp. 74, 78 (D. Conn. 1994));

*German v. Eslinger*, No. 6:08-cv-845-Orl-22GJK, 2008 WL 2915071, at * 1-2 (M.D. Fla. July 25,

2008) (citing *James*, 799 F. Supp. at 1084; *Gregory*, 896 F.Supp. at 84).  In addition, courts in this

circuit have declined to exercise supplemental jurisdiction over state law claims which would only

serve to introduce jury confusion and delay.  *Id*. (both citing *Bennett v. S. Marine Mgmt. Co.*, 531

F. Supp. 115, 117-18 (M.D. Fla. 1982), and *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.

1982)).

      C.     *Supplemental Jurisdiction Over Counterclaims.*

     Prior to the enactment of § 1367 in 1990, courts found that federal courts could exercise

ancillary jurisdiction over counterclaims that were considered compulsory under Federal Rule of

Civil Procedure 13(a).  *See, e.g.*, *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974);

*Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 714 (5th Cir. 1970).  A

counterclaim is compulsory if it arises out of the transaction or occurrence that is the subject

matter of the opposing party's claim and does not require adding another party over whom the

court cannot acquire jurisdiction.  Fed. R. Civ. P. 13(a).  The Eleventh Circuit applies the "logical

relationship" test in order to determine if a counterclaim is compulsory.  *Republic Health Corp. v.

Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985) (citing *United States v.

Aronson*, 617 F.2d 119, 121 (5th Cir. 1980)).  Under this test, there is a logical relationship when

"the same operative facts serve as the basis of both claims or the aggregate core of facts upon

which the claim rests activates additional legal rights, otherwise dormant, in the defendant."  *Id.*

(quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)).  Moreover, a counterclaim is compulsory if a separate trial on the counterclaim "'would involve a substantial duplication of effort and time by the parties and the courts,'" because, for example, the plaintiff's claim and the defendant's counterclaim "'involve many of the same factual issues, or . . . where they are offshoots of the same basic controversy between the parties.'" *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 236 (5th Cir. 1970) (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961)).

A permissive counterclaim is any counterclaim that is not a compulsory counterclaim. Fed. R. Civ. P. 13(b).  Prior to the enactment of § 1367, the Fifth and Eleventh Circuits held that permissive counterclaims required an independent jurisdictional basis before a federal court could exercise subject matter jurisdiction over them.  *Plant*, 598 F.2d at 1359; *East-Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n*, 888 F.2d 1576, 1578 (11th Cir. 1989).

Section 1367 does not itself draw a distinction between compulsory and permissive counterclaims, but there is a split in this circuit as to whether permissive counterclaims still require an independent jurisdictional basis following the enactment of § 1367.  *Compare Premium Leisure, LLC v. Gulf Coast Spa Mfrs., Inc.*, No. 8:08-cv-1048-T-24EAJ, 2008 WL 3927265, at *3 (M.D. Fla. Aug. 21, 2008) (collecting cases and noting precedent for requiring independent jurisdictional basis for permissive counterclaims) *with Yeseren v. CKSINGH Corp.*, No. 2:10-cv-253-FtM-29DNF, 2010 WL 4023524, at *2 (M.D. Fla. Oct. 13, 2010) (finding a counterclaim's status as compulsory or permissive is no longer necessarily determinative of whether the court has jurisdiction over the counterclaim).  The consensus among the circuit courts that have considered

the status of permissive counterclaims after the enactment of § 1367 seems to be that § 1367 "extended the scope of supplemental jurisdiction . . . to the limits of Article III" and conferred subject matter jurisdiction over permissive counterclaims so long as they satisfied § 1367(a).  *See, e.g.*, *Global NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 87 (1st Cir. 2010), *cert. denied*, 131 S. Ct. 1033 (2011) (holding that § 1367 gives federal courts supplemental jurisdiction over permissive counterclaims that meet the Article III "case or controversy" test set forth in § 1367(a) and that § 1367 superseded case law that distinguished between compulsory and permissive counterclaims); *Jones v. Ford Motor Credit*, 358 F.3d 205, 212-13 (2d Cir. 2004) (finding that court could exercise supplemental jurisdiction over permissive counterclaim that satisfied § 1367(a)); *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996) (finding that court could exercise supplemental jurisdiction over permissive counterclaim because it satisfied § 1367(a) and stating, "Now that Congress has codified the supplemental jurisdiction in § 1367(a), courts should use the language of the statute to define the extent of their powers.").  Accordingly, the appropriate focus should be whether the counterclaim satisfies the requirements of §1367 – that is, whether the state law claims are so related to a federal claim as to form part of the same case or controversy under Article III of the Constitution – rather than on whether the counterclaim is compulsory or permissive.  *Scott v. A&Z Gen. Cleaning Servs., Inc.*, No. 6:11-cv-848-Orl-28DAB, 2011 WL 3516075, at * 2 (M.D. Fla. July 18, 2011), *adopted by* 2011 WL 3516145 (M.D. Fla. Aug. 11, 2011) (appropriate focus remains on whether counterclaim satisfies § 1367).

## III.    ANALYSIS.

   A.    *Whether the Court May Exercise Supplemental Jurisdiction Pursuant to § 1367(a).*

Applying the standard of § 1367(a) to this case, whether Winter Garden Realty's counterclaims form a part of the same case or controversy as Cruz's FLSA wage claims is a close question.  Winter Garden Realty shows some connection between the two by alleging that Cruz's alleged tortious interference, civil theft, and conversion occurred "[d]uring the exact same period for which Cruz now claims entitlement to additional compensation" and that some of the same witnesses will testify with respect to Cruz's FLSA wage claims and its counterclaims.  Doc. No. 22 at 5-6.  However, I am not convinced that this connection is sufficient to constitute a common nucleus of operative fact such that Cruz's FLSA wage claims and Winter Garden Realty's counterclaims become a part of the same case or controversy under Article III of the Constitution and satisfy § 1367(a).

Cruz's FLSA wage claims are essentially a controversy about Winter Garden Realty's failure to pay her minimum wage and/or overtime compensation for certain hours of work during her twenty months at Winter Garden Realty.  As such, trial of her FLSA wage claims will focus on whether the FLSA applies to her work for Winter Garden Realty, how many hours Winter Garden Realty "suffered or permitted" her to work, and how much she should have been paid for that work.  29 U.S.C. §§ 203, 206, 207.  Winter Garden Realty's counterclaims, by contrast, focus on some discrete actions Cruz allegedly took during the time she worked for Winter Garden Realty and their effect – specifically, they focus on Winter Garden Realty's claim that Cruz allegedly told tenants they did not need to pay rent and allegedly took rent checks from tenants but refused to turn them over to Winter Garden Realty.  Although Winter Garden Realty claims that Cruz's alleged tortious interference, civil theft, and conversion occurred "[d]uring the exact same period for which Cruz now claims entitlement to additional compensation," Doc. No. 22 at 5, this

temporal proximity is not sufficient to meet the "common nucleus of operative fact" test.  *See,*

*e.g.*, *Yeseren*, 2010 WL 4023524, at *4 (no common nucleus of operative fact where plaintiff

alleged FLSA violations and employer counterclaimed for conversion and breach of duty of

loyalty committed during the same period for which plaintiff claimed FLSA violations); *Dowell v.*

*KIDZ R 4 UZ, Inc.*, No. 6:08-cv-651-Orl-22KRS, 2008 WL 4613049, at *2 (M.D. Fla. Oct. 14,

2008) (no common nucleus of operative fact where plaintiff alleged FLSA violations and

employer counterclaimed for failure to repay a loan made during employment).  Rather, some

further connection between Cruz's FLSA wage claims and Winter Garden Realty's counterclaims

is required.

      The closest Winter Garden Realty comes to providing a connection between its

counterclaims and Cruz's FLSA wage claims is to state vaguely that "the question of whether

Cruz was genuinely doing work for Winter Garden (for which she alleges entitlement to additional

compensation) as opposed to giving the impression of working, and in fact, tortiously interfering

with Winter Garden's contractual relationships with its tenants, stealing from Winter Garden,

unlawfully converting Winter Garden rent monies for her own use, or simply residing at Winter

Garden but not doing any actual work, or doing work for another company, is central to Cruz's

wage claims, Winter Garden's Counterclaims, and Winter Garden's defenses to Cruz's wage

claims."  Doc. No. 18 ¶ 10; Doc. No. 22 at 5.  However, this statement is a legal conclusion, not a

fact that the Court is required to accept as true in deciding Cruz's motion to dismiss.[3]  Moreover,

--------

[3]  Indeed, this description of Winter Garden Realty's counterclaims appears to mimic the language used in *Zambrana v. Geminis Envios Corp.*, No. 08-20546-CIV, 2008 WL 2397624, at * 3 (S.D. Fla. June 10, 2008), to describe its conclusion about whether one of the defendants' counterclaims arose from a common nucleus of operative fact as the plaintiff's FLSA claims.  ("Therefore, the question of whether

Winter Garden Realty does not elaborate on *why* this question is central.  It also does not offer any authority for the proposition that an employer need not pay an employee for any hour worked in which the employee stole/converted the employer's property or tortiously interfered with its contracts.

In this sense, Winter Garden Realty's counterclaims are very similar to the counterclaims at issue in *Yeseren.*  In that case, the plaintiff worked at a service station.  He filed a lawsuit alleging that his employer failed to comply with the overtime provisions of the FLSA.  His employer filed counterclaims against the plaintiff for conversion and breach of duty of loyalty.  Specifically, the employer claimed that, while the plaintiff was supposed to be working, he was, among other things, taking cash from customers but keeping it for his personal use rather than placing the cash in the cash register and removing items from the service station without paying for them.  *Id.,* at *1.  The plaintiff moved to dismiss the counterclaims, and the court granted the motion, finding that the plaintiff's FLSA claims and the defendant's counterclaims did not arise from a common nucleus of operative fact.  The court reasoned:

> Defendant has not provided any authority for the proposition that an employer need not pay an employee for any hour worked in which the employee stole or was disloyal, so it appears that thievery and disloyalty will not be an issue with regard to the overtime pay case.  Absent more of a showing that there is a legally relevant connection between the stealing and the obligation to pay an employee, the Court cannot conclude that either counterclaim arises from the common nucleus of operative facts . . . .

*Id.* at *4.

---

Plaintiff was genuinely working for Defendants on the one hand or whether he gave the impression of working for the Defendants while he accessed Defendants' customer lists to steal their customers is central to both Plaintiff's FLSA claim and Defendant's counterclaim.").

Defendant argues that other cases in which courts have found that they could exercise supplemental jurisdiction are also factually similar to the present case.  For example, in *Zambrana* a judge in the Southern District of Florida concluded that a plaintiff's FLSA claims and the defendants' counterclaim for tortious interference with contracts arose from a common nucleus of operative fact based on allegations that "while Plaintiff appeared to be working, he was in fact surreptitiously accessing Defendants' customer list to solicit those customers' business for his own benefit."  *Zambrana*, 2008 WL 2397624, at * 1.  However, the judge in *Zambrana* did not explicitly discuss whether the defendants were required to pay the plaintiff for any hours in which he was tortiously interfering with its contracts.  *Id.*, at * 3.  Because the record does not reflect the full circumstances that led to the opinion of the *Zambrana* court, this opinion has little persuasive value on this point.  On this point, I am persuaded by the rationale of the *Yeseren*, as discussed above.

In *Arcusa v. Lisa Coplan-Gardner, P.A.*, No. 3:07-cv-712-J-33TEM, 2007 WL 3521986 (M.D. Fla. Nov. 15, 2007), and *Ward v. Winter Garden Business Park*, No. 6:06-cv-53-Orl-31KRS, 2006 WL 1382108 (M.D. Fla. May 19, 2006), the defendants asserted valid defenses to the plaintiff's FLSA claim, and the same facts that formed the basis of the defense formed the basis of the counterclaim.  In *Arcusa*, the plaintiff alleged that the defendant violated the FLSA by failing to pay her overtime and retaliating by terminating her employment for complaining about FLSA violations.  The defendants asserted that a legitimate, non-retaliatory reason for terminating the plaintiff's employment was that she had been using its resources to further her own commercial enterprises, which in turn gave rise to its counterclaim for conversion.  *Id.*, at *1.  Likewise, in *Ward*, the plaintiff alleged that, during the entire span of his employment with the

defendant, he had not been paid in accordance with the minimum wage and overtime provisions of the FLSA.  The defendant responded by claiming that the FLSA's minimum wage and overtime provisions did not apply because it did not authorize the plaintiff to work at all during the relevant time period.  Instead, the defendant alleged that it had entered into a contract with the plaintiff whereby he could stay rent free on its premises on the condition that he not start working for the defendant until its storage facility opened.  That contract, in turn, formed the basis for its counterclaim, which alleged that the plaintiff breached his contractual agreement not to work until the storage facility opened.  *Id.* at * 1 and n.1.  They are, accordingly, distinguishable from the instant case because Winter Garden Realty has not established that it would have a valid defense to Cruz's FLSA wage claims if it could show that Cruz tried to convince its tenants not to pay rent and/or took rent checks but refused to turn them over to Winter Garden Realty.  Indeed, it has not even made it clear that Cruz is seeking minimum wage or overtime compensation for the time in which she was allegedly engaging in tortious conduct.

The final case cited by Winter Garden Realty*, Chen v. Cayman Arts, Inc.*, No. 10-80236-CIV, 2011 WL 744657 (S.D. Fla. Feb. 11, 2011) ("*Chen 2*"), is even less apposite.  First, that case involved a third-party complaint, not counterclaims.  *Id.*, at * 1.  Second, in *Chen 2*, the plaintiff asserted multiple claims against his former employer, including claims for breach of contract, false designation of origin under the Lanham Act, misappropriation of name and likeness, unfair competition, breach of implied covenant of good faith and fair dealing, unjust enrichment, and overtime under the FLSA, while the defendants' third-party complaint alleged tortious interference with contractual relationships, unfair competition/common law trademark infringement and common law copyright infringement, and theft of trade secrets.  *See Chen v.*

-13-

*Cayman Arts, Inc.*, 757 F. Supp. 2d 1294, 1298 (S.D. Fla. 2010) ("*Chen 1*"); *Chen 2*, 2011 WL 744657, at * 1.  Without rehashing the entire and complicated factual scenario at issue in *Chen 2*, suffice it to say that the multiple overlapping claims and factual allegations of plaintiff's complaint and defendant's third-party complaint made it clear that the plaintiff's claims and the defendant's third-party complaint could not be easily separated out from one another.  Such is not the case in the instant lawsuit.

Ultimately, I am persuaded that the *Yeseren* case is the most analogous to the facts of the instant lawsuit and that its rationale is the most applicable.  Considered in that light, Cruz's FLSA wage claims and Winter Garden Realty's counterclaims are fundamentally two separate cases or controversies – one related to whether Winter Garden Realty paid Cruz correctly under the FLSA and one related to whether Cruz harmed Winter Garden Realty by her allegedly tortious actions.  While it is a close question, following *Yeseren*, I am not convinced that Winter Garden Realty has sufficiently alleged that its counterclaims and Cruz's FLSA wage claims arise from a common nucleus of operative fact such that the Court may exercise supplemental jurisdiction pursuant to § 1367(a).

    **B.**    *Whether the Court Should Decline to Exercise Supplemental Jurisdiction Pursuant to § 1367(c).*

    1.    <u>Applicability of § 1367(c) Factors</u>.

Assuming that the Court could exercise supplemental jurisdiction over Winter Garden Realty's counterclaims, Winter Garden Realty did not present persuasive authority supporting its argument that this Court cannot decline to accept jurisdiction because its counterclaims are compulsory under Fed. R. Civ. P. 13(a).  It cites to one district court case saying that federal

-14-

courts "automatically" have supplemental jurisdiction over compulsory counterclaims, Doc. No. 22 at 3, 6 (citing *Ward*, 2006 WL 1382108, at * 2), and another district court case that found a counterclaim to be compulsory and exercised supplemental jurisdiction without considering the § 1367(c) factors, *id*. at 6 (citing *Arcusa*, 2007 WL 3521986, at * 2).

While the Eleventh Circuit has not explicitly ruled on this issue, I note that in *Murphy v. Fla. Keys Elec. Co-Op. Ass'n, Inc.*, 329 F.3d 1311, 1318-19 (11th Cir. 2003), it found that a district court did not abuse its discretion when it declined to continue to exercise supplemental jurisdiction over a compulsory counterclaim pursuant to § 1367(c)(3) after it had dismissed the federal claims over which the court had original jurisdiction. Although not directly on point, *Murphy* strongly suggests that the § 1367(c) factors may still be considered even for compulsory counterclaims.

If the Court finds that the status of Winter Garden Realty's counterclaims as compulsory or permissive is relevant, I recommend that the Court find that Winter Garden Realty's counterclaims are permissive. As explained above, Winter Garden Realty has not shown that Cruz's FLSA wage claims and its counterclaims meet the "common nucleus of operative fact" test, let alone the narrower "same transaction or occurrence" test required to establish a counterclaim as compulsory. In addition, as explained in detail below, even if there is some overlap of facts and witnesses between Cruz's FLSA wage claims and Winter Garden Realty's counterclaims, the fact that Winter Garden Realty's counterclaims require it to prove elements foreign to Cruz's FLSA wage claims (such as Cruz's intent and Winter Garden Realty's damages), means that there will not be a substantial duplication of effort if the parties are required to litigate the counterclaims in a separate action. *See Goings v. Advanced Sys., Inc.*, No. 8:08-cv-1110-T-33TGW, 2008 WL

-15-

4195889, at * 3 (M.D. Fla. Sept. 12, 2008) (counterclaims not compulsory where most of the facts needed for prosecution and defense of plaintiff's FLSA claims were distinct from the facts needed to litigate defendant's counterclaim for breach of contract, separate trials of the claims would not involve substantial duplication of effort, and elements of proof for each claim were distinct from one another).

   2. <u>Application of § 1367(c) Factors</u>.

  Section 1367(c) permits the Court to decline to exercise supplemental jurisdiction if the state-law claims would substantially predominate over the federal claim.  Here, Winter Garden Realty's counterclaims require elements of proof foreign to Cruz's FLSA wage claims. Specifically, to succeed on its counterclaims, Winter Garden Realty will need to go beyond showing that Cruz tried to convince its tenants not to pay their rent and failed to turn over rent checks during the time for which she now seeks additional compensation.

- For its tortious interference claim, Winter Garden Realty will also need to show: (1) the existence of a contract; (2) Cruz's knowledge of the contract; (3) Cruz's intentional and unjustified procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damage to Winter Garden Realty resulting from the breach.  *Fla. Tel. Corp. v. Essig*, 468 So.2d 543, 544 (Fla. Dist. Ct. App. 1985) (citations omitted).

- For its civil theft claim, it will need to show that Cruz: "(1) knowingly (2) obtained or used, or endeavored to obtain or use [Winter Garden Realty's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [Winter Garden Realty] of its right to or a benefit from the property or (b) appropriate the

-16-

property to [Cruz's] own use or to the use of any person not entitled to the

property." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009)

(applying Florida law and citing Fla. Stat. §§ 772.11, 812.014(1); *Almedia v.*

*Amazon.com, Inc.*, 456 F.3d 1316, 1326-27 (11th Cir. 2006); and *Gersh v. Cofman*,

769 So.2d 407, 409 (Fla. Dist. Ct. App. 2000)).

- For its conversion claim, it will need to show "an act of dominion wrongfully

  asserted over another's property and inconsistent with [its] ownership therein."

  *Warshall v. Price*, 629 So.2d 903, 904 (Fla. Dist. Ct. App. 1993).

Many, if not all, of these elements are foreign to Cruz's FLSA claim and Winter Garden Realty's

affirmative defenses.  Accordingly, I recommend that the Court find, if supplemental jurisdiction

exists, that Winter Garden Realty's counterclaims will substantially predominate over Cruz's

FLSA wage claims, as set forth in § 1367(c).  *See, e.g.*, *Ciavaglia*, 2008 WL 782494, at * 1-2 and

*German*, 2008 WL 2915071, at * 1 (both citing *James*, 799 F.Supp. at 1084; *Gregory*, 896 F.

Supp. at 78).

   The Court may also decline to exercise supplemental jurisdiction after analysis of the

traditional supplemental jurisdiction set forth by the Eleventh Circuit in *Palmer*, including judicial

economy, convenience, fairness to the parties, and whether all the claims would be expected to be

tried together.  *Palmer,* 22 F.3d at 1569.  I conclude that those factors also support declining to

exercise supplemental jurisdiction.  Given the multiple foreign elements of proof necessary for

Winter Garden Realty to make out its counterclaims, including Winter Garden Realty's

counterclaims in the trial of Cruz's wage claims would likely require significantly more judicial

resources than a trial of Cruz's wage claims alone.  Likewise, Winter Garden Realty's

counterclaims would likely command the majority of the jury's attention in the courtroom and deliberations.  In addition, Winter Garden Realty's counterclaims may well shift the jury's focus from Winter Garden Realty's pay practices (the proper focus of Cruz's FLSA wage claims) to Cruz's actions, thereby creating the potential for juror confusion.  By way of contrast, Winter Garden Realty can litigate its tortious interference, civil theft, and conversion claims fully in state court.  Even if there is some overlap with the trial of Cruz's FLSA wage claims, the disparity in elements between those claims and Winter Garden Realty's counterclaims means that the overlap will likely be minimal.

Accordingly, even if the Court could exercise supplemental jurisdiction over Winter Garden Realty's counterclaims, under these circumstances and after considering all the factors set forth by the Eleventh Circuit in *Palmer*, I respectfully recommend that the Court decline to do so pursuant to 28 U.S.C. § 1367(c)(2) because Winter Garden Realty's counterclaims would substantially predominate over Cruz's FLSA wage claims and because including Winter Garden Realty's counterclaims in this case would create the potential for juror confusion and delay.

## IV.    RECOMMENDATION.

For the foregoing reasons, I **RESPECTFULLY RECOMMENDED** that the Court:

(1)    **GRANT** Cruz's motion to dismiss Winter Garden Realty's Amended Counterclaims; and

(2)      **DISMISS** Winter Garden Realty's Amended Counterclaim, Doc. No. 18, with

leave to refile in state court within the time permitted by § 1367.

Failure to file written objections to the proposed findings and recommendations contained

in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 27, 2012.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy